ERNEST HUGHES v. STATE.

No. A-5930.    Opinion Filed Oct. 8, 1927.
(259 Pac 668.)

Wieck & Armstrong, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J. Appellant Ernest Hughes and Howard Love were charged in an information with the murder of J. A. Sewell. A severance was granted, and appellant upon his trial was convicted as charged and his punishment assessed at life imprisonment in the penitentiary. From the judgment rendered in pursuance of the verdict he appeals, but no brief has been filed or appearance made in his behalf in this court.

The evidence for the state which is undisputed developed the following facts:

The deceased, J. A. Sewell, was a deputy sheriff of Tulsa county, and for some time prior to his death had been assigned the duty of transporting prisoners to state institutions. On the morning of the 24th day of March, 1925, he left the Tulsa county jail with appellant Hughes and his codefendant, Love. With these two he had a boy, about 12 years old, who had been

committed by the juvenile court of Tulsa county to the boys' training school at Pauls Valley. Appellant some time prior thereto had escaped from the Granite reformatory, and had been apprehended, and was being returned. The defendant Howard Love was being taken to the reformatory at Granite under a sentence of five years, rendered on a plea of guilty in the district court of Tulsa county.

The deceased was driving a Chevrolet car. The defendants were in the back seat; appellant on the right with his left hand hand-cuffed to Love's right hand; a chain passed over the handcuffs and was fastened to a part of the car. They arrived at Pauls Valley in the afternoon. There the deceased left the boy at the state training school and started on to Granite by the way of Chickasha. It had been his practice and custom on trips to Granite to spend the night at Chickasha. About sundown the deceased with his prisoners passed through the town of Bradley and it was observed that appellant was sitting in the back seat on the right-hand side of the car and his codefendant, Love, was in the back seat on the left-hand side of the car, and they were also observed by several persons passing through the town of Alex; it was then about dusk.

Two or three witnesses testified to meeting the deceased with his prisoners between Alex and Chickasha a little after sundown.

The next morning the body of the deceased with three gunshot wounds was found by the side of the road between Alex and Chickasha. One bullet entered the right shoulder; the exit was below the right nipple; another bullet entered the right breast and a third entered the body.

The pockets of the deceased were empty, his money, his keys and his pistol were gone; one pocket turned inside out was blood stained.

It appears from the admissions of appellant they had taken the keys and considerable money from this pocket. It also appears from appellant's admissions that the deceased, after he was shot, got out of his car and ran a few steps and fell; that they went to him and picked him up, and put him back in his car, and drove on a short ways when they had to stop to change a tire; that they used the deceased's pistol to shoot the handcuffs off, and in so doing one of the bullets struck the tire; that the shooting occurred between 8 and 9 o'clock that evening.

It appears that they drove from there to Chickasha, stopped at the Marland Garage, and there Love purchased oil and gasoline for the car. From there they went to Oklahoma City, and from there to Ponca City, where appellant's father resided. Appellant's statement is that they arrived at Ponca City in the early morning; that he woke his father up but did not tell him what he had done, and the deceased's car was left at Ponca City. The coat and hat of the deceased and his suit case were found in the car; the evidence shows that upon a search being made near where the body was found, the handcuffs and three empty shells were found, and nearby was found the tire and rim of the car.

Appellant's admissions show that after leaving Tulsa, these defendants discussed the matter of disarming the deceased, and while at Pauls Valley, they agreed that they would take from the deceased his gun, make him a prisoner, take his car and make their escape; that in carrying out the agreement Love secured the deceased's pistol and fired the fatal shots; that leaving the deceased's car at Ponca City they returned to Tulsa, and after staying there a day or two, they separated. On April 3rd, R. D. Sanford, sheriff of Tulsa county, arrested appellant in the town of Marshall, Ark., where he was going under the name of J. C. Coombs.

As a witness in his own behalf, the defendant testified:

"We traveled west after leaving Pauls Valley; we stopped at a little town; it was either Alex or Brady; it was then almost dark; Mr. Sewell got out and bought some cigars; before we got to Pauls Valley, Howard said he was going to grab the gun and make an escape; I didn't say a word, I really didn't think that he had the guts to do anything like that; I did not at any time enter into any agreement with him to make this escape. About seven or eight miles beyond Alex, Howard grabbed the gun with his left hand and put it in his right; Mr. Sewell swung around and grabbed back at the gun and was shot; there were three or four shots and the car stopped; Mr. Sewell got out in kind of a dazed condition, and walked possibly a hundred feet, something like that, and fell; Howard got out of the car and then I got out; Howard shot the chain between the handcuffs; then shot the handcuffs off; the cuff on my hand was very loose, and the jar of the shot sprung the cuff on my hand, and it fell off. We put Mr. Sewell in the back seat of the car; the rear tire had a hole shot through it, and we stopped and changed the tire; then we put Mr. Sewell out beside the road by a farm house; he was still breathing; it was then about 8:30; Howard took Mr. Sewell's money, $40 or $50 . We drove to Chickasha; from there to Oklahoma City, and then to Guthrie, then to Ponca City; from there we went to Tulsa, and from there I went to Marshall, Ark."

The record is voluminous, but we deem it unnecessary to further detail the evidence in the case.

The errors assigned question the sufficiency of the evidence to sustain the conviction; that the court erred in permitting the introduction of improper and incompetent testimony over the defendant's objections, and that the court erred in giving certain instructions and in refusing requested instructions.

From all the evidence in the case carefully considered, we cannot see how any jury could have rendered

a verdict otherwise. The testimony is so conclusive as to the guilt of the defendant that nothing can be said in his defense.

On the trial numerous objections were made to the rulings of the court in the admission of evidence, but an examination of the same leads to the conclusions that said objections were properly overruled.

We have examined the instructions, and find no error which could have prejudiced the substantial rights of the defendant.

The record shows that the defendant had a fair trial, with every right accorded him that the law justifies or requires, and our conclusion is that the law can only be vindicated by an affirmance of the conviction.

The judgment of the trial court is accordingly affirmed.

EDWARDS and DAVENPORT, JJ., concur.